# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SIXT TITLING TRUST, a Delaware statutory trust | ) ) ) |
| Plaintiff, | ) ) Case No. |
| v. | ) ) ) |
| ATL ROADSIDE & RECOVERY INC., an Illinois corporation, and ADT TOWING & RECOVERY, INC., an Illinois corporation, and R-J Towing LLC, an Illinois limited liability company | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## **VERIFIED COMPLAINT FOR REPLEVIN**

Plaintiff, Sixt Titling Trust ("Sixt") hereby sues Defendants ATL Roadside & Recovery, Inc. ("ATL Towing"), ADT Towing & Recovery, Inc. ("ADT Towing"), and R-J Towing LLC ("RJ") and states as follows:

## **INTRODUCTION**

1. As detailed below, Sixt Titling Trust is the owner of the vehicles in the rental car fleet operated by Sixt Rent a Car, LLC, a national car rental agency, which conducts business throughout the United States, and which is headquartered in Fort Lauderdale, Broward County, Florida.

1

2. In recent weeks, Sixt's vehicles in the Chicago area have been targeted by tow yards with a history of illegal activity—ATL Towing (now known as ADT Towing) is one of those tow yards. Upon information and belief, ATL Towing is soliciting third parties to rent Sixt vehicles in order to manufacture fraudulent vehicle recoveries and demand exorbitant, unlawful tow charges from Sixt at risk of its property being lost. As of the time of filing, ATL Towing has wrongfully taken more than twenty (20) of Sixt's vehicles. ATL Towing continues to possess at least nine (9) of those vehicles, and is demanding in excess of $150,000 for basic tow services. Immediate, emergency intervention is needed to restore Sixt's property and avoid its imminent destruction, concealment, or transfer.

## JURISDICTION, PARTIES, AND VENUE

3. This is an action to recover property in excess of $75,000.00 and for injunctive relief.

4. Plaintiff Sixt is a Delaware statutory trust with its principal place of business located in Fort Lauderdale, Broward County, Florida.

5. Defendant ATL Towing is an Illinois corporation with its principal place of business in Chicago, Illinois.

6. Defendant ADT Towing is an Illinois corporation with its principal place of business in Chicago, Illinois.

7. Defendant RJ is an Illinois limited liability company conducting business in and around Chicago, Illinois.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as Defendants ATL Towing, ADT Towing, and RJ are incorporated and headquartered in Illinois; Sixt is a Delaware trust with its principal place of business in Florida, and the value of the vehicles in question and the amounts demanded by the Defendants far exceed $75,000.00.

9. Venue is proper in this Court because the Defendants are located in this District, the vehicles in question were wrongfully repossessed and/or detained by the Defendants in this District, and Sixt's causes of action accrued in this District.

## GENERAL ALLEGATIONS

10. This action concerns fraudulent towing charges imposed by ATL Towing and ADT Towing during September and October of 2024, and Defendants' continuing wrongful detention of nine (9) of Sixt's vehicles. Defendants have and continue to unlawfully take Sixt's vehicles and demand unlawful tow fees in excess of $20,000 per (basic) tow for their return.

11. ATL Towing and ADT Towing are alter egos. These entities share employees, conduct the same business, and ADT Towing has merely continued the business of ATL Towing following the revocation of its Public Carrier Certificate and Safety Relocator Registration on September 20, 2024.

3

12. Sixt has communicated directly with ATL Towing regarding recovered vehicles since August of 2024. Beginning in October of 2024 those that operated ATL Towing began recovering vehicles under the name ADT Towing. Because the entities are one and the same, they are hereafter collectively referred to as "ATL."

13. This is not the first towing venture for the operators of ATL. Upon information and belief, the same group of individuals were involved in the operation of Flash Towing and AP Towing.

14. AP Towing was the perpetrator of well-documented towing scams in the Chicago area throughout 2022. *See* "$57,800 tow charge? Driver outraged with another AP Towing and Recovery Scam", CBS News Chicago, https://www.cbsnews.com/chicago/news/57800-tow-charge-ap-towing-recovery/ (last visited Nov. 7, 2024).

15. AP Towing's scams led to the revocation of its Public Carrier Certificate and Safety Relocator Registration by the Illinois Commerce Commission between December 2022 and March 2023, and arrest (and subsequent release) of its owners.

16. Upon information and belief, Flash Towing was operated by the same individuals and perpetrated the same type of towing scams in the same market. That company operated without a license within Chicago and repeatedly sought to charge unsuspecting, defenseless consumers tens of thousands of dollars for basic tow

charges. *See "After Chicago Shuts Down Flash Towing, Company Moves to DuPage County lot"*, CBS News Chicago, https://www.cbsnews.com/chicago/news/flash-towing-moves-dupage/ (last visited Nov. 7, 2024).

17. Flash Towing's Public Carrier Certificate and Safety Relocator Registration were likewise revoked in 2023.

18. ATL has picked up where those entities left off. From August 7th through October 25th, 2024, ATL has managed to "recover" twenty-three (23) rental cars owned by Sixt.

19. Upon information and belief, ATL is continuing the same scams and working and conspiring with those that perpetrated those tow scams to illegally take and detain Sixt's vehicles.

20. Illinois public records show that Flash Towing was owned by Luis Mojica. Mojica is regularly pictured in the social media posts of ATL and its principals and agents. Evidencing the conspiracy among this group to target and steal Sixt's vehicles, Mojica is the individual that rented and first took possession of the 2024 Jeep Compass (mentioned below) that was then (almost immediately) towed/taken by ATL on October 2, 2024, and made the subject of a demand for $24,000.

21. Similarly, in September 2024, Charlie Lopez Morales rented a 2024 Jeep Compass owned by Sixt. That vehicle was almost immediately towed by ATL

5

and made the subject of a demand for $23,500. A review of Illinois public records shows that Charlie Lopez Morales was the owner of Sand City Towing—another illegal towing operation that was shut down after a police raid. *See* "Illegal Towing Operation Exposed in Harvey, Dozens of Vehicles Seized in Raid", Fox32 Chicago, https://www.fox32chicago.com/news/possible-illegal-towing-operation-exposed-harvey-dozens-vehicles-seized-raid (last visited Nov. 11, 2024).

22. ATL has misrepresented the facts and circumstances of those tows, has misrepresented the condition of the vehicles in their possession, has intentionally violated the Illinois Commercial Safety Towing Law (625 ILCS 5/Ch. 18d), and has demanded fraudulent and illegal tow fees in excess of $20,000 per vehicle.

23. ATL has illegally towed twenty-three (23) rental cars, and is unlawfully detaining nine (9) of those vehicles (which are rightfully owned by Sixt).

24. Sixt retained the undersigned counsel to take legal action to recover the vehicles from ATL Towing, along with damages and other equitable relief, and is entitled to recover its costs and attorney's fees.

25. All conditions precedent to this action occurred, were satisfied, or were otherwise waived as of the filing of this lawsuit.

A. *ATL's Licenses have been Revoked and Its Towing Activities are Illegal*

22. The Illinois Commercial Safety Towing Law, in conjunction with local ordinances, governs the obligations of tow companies like ATL.

23. 625 ILCS 5/18d-115 states

***It shall be unlawful for any commercial vehicle safety relocator to operate in any county in which this Chapter is applicable without a valid, current safety relocator's registration certificate issued by the Illinois Commerce Commission.*** The Illinois Commerce Commission shall issue safety relocator's registration certificates in accordance with administrative rules adopted by the Commission. The Commission may, at any time during the term of the registration certificate, make inquiry, into the licensee's management or conduct of business or otherwise, to determine that the provisions of this Chapter and the rules of the Commission adopted under this Chapter are being observed.

24. Further, "Any commercial vehicle safety relocator engaged in the relocation or storage or damages or disabled vehicles who fails to comply with Section 18-115 . . . of this Code ***commits an unlawful practice within the meaning of the Consumer Fraud and Deceptive Business Practices Act***." 625 ILCS 5/18d-160 (emphasis added).

25. And "If the commercial vehicle safety relocator fails to comply with the requirements of [the Act], the commercial vehicle safety relocator shall be prohibited from seeking any compensation whatsoever from the vehicle owner or operator, including but not limited to any towing, storage, or other incidental fees." 625 ILCS 5/18d-120.

26. A review of the Illinois Commerce Commission's records shows that ATL Towing's Public Carrier Certificate and Safety Relocator Registration ***were revoked by the Illinois Commerce Commission on September 20, 2024***. A

7

screenshot of the Illinois Commerce Commission's webpage reflecting that revocation is below.



27. Following the revocation of ATL Towing's licenses, it utilized ADT Towing to obtain a new certificate and continue its illegal operation. ADT Towing did not obtain a Safety Relocator Registration until October 8, 2024—a screenshot of the Illinois Commerce Commission's webpage reflecting that registration is below.



B. *ATL's Pattern of Illegal Tows and Fraudulent Charges*

28. Over the course of the last seventy-five (75) days, ATL has managed to "recover" and possess Sixt's vehicles at an alarming rate.

29. The charges immediately imposed and demanded by ATL in connection with those tows are exorbitant and unlawful.

30. On August 7, 2024, ATL Towing took possession of Nissan Rogue owned by Sixt bearing Vehicle Identification Number ("VIN") JN8BT3BB6RW430257. ATL Towing demanded $8,760 for the tow.

31. When Sixt inquired as to the reason for this tow, ATL Towing advised that the vehicle had fallen from a bridge into water. When Sixt recovered the vehicle, it showed no signs of damage or water damage.

9

32. On or about August 9, 2024, ATL Towing took possession of a 2024 Toyota Camry owned by Sixt and bearing VIN 4T1C11AK4PU813632. ATL Towing immediately demanded $8,960 for the tow.

33. When Sixt inquired as to the reason for this tow, ATL Towing advised that the vehicle had been towed due to a flood. When Sixt recovered the vehicle, it showed no signs of water damage and the engine ran without issue.

34. On or about August 14, 2024, ATL Towing took possession of a Jeep Compass SUV owned by Sixt and bearing VIN 2T3P1RFV9RW464805. ATL Towing immediately demanded $8,980 for the tow.

35. When Sixt inquired as to the reason for this tow, ATL Towing advised that the vehicle had been stuck in water and the engine was no longer working. When Sixt recovered the vehicle it showed no signs of water damage and the engine ran without issue.

36. On or about August 27, 2024, ATL Towing took possession of a 2024 Chevrolet Equinox owned by Sixt and bearing VIN 3GNAXUEG0RS239087. ATL Towing immediately demanded more than $15,000 for the tow.

37. On or about September 16, 2024, ATL Towing took possession of a 2024 Chevrolet Equinox owned by Sixt and bearing VIN 3GNAXUEG2RS241567. ATL Towing immediately demanded $21,855.00 for the tow.

38. On or about September 20, 2024, after revocation of its licenses by the Illinois Commerce Commission, ATL Towing unlawfully took possession of a 2025 BMW 430xi owned by Sixt and bearing VIN WBA63DA09SCS84167. ATL Towing immediately demanded $24,370 in fees and charges in exchange for its return.

39. On or about September 24, 2024, again, after revocation of its licenses by the Illinois Commerce Commission, ATL Towing unlawfully towed a 2024 Toyota Camry owned by Sixt and bearing VIN 4T1C11BK4RU111568. ATL Towing immediately demanded $12,500 in fees and charges for that standard tow.

40. The takings continued, as on or about that same day ATL Towing unlawfully took a 2023 Toyota Corolla owned by Sixt and bearing VIN 7MUCAAAG2PV051864. ATL Towing immediately demand $21,860 for that alleged recovery.

41. On or about September 30, 2024, ATL Towing unlawfully towed a 2024 Toyota RAV 4 owned by Sixt and bearing VIN 2T3P1RFV9RW464805. ATL Towing immediately demanded $22,000 for the vehicle's return.

42. On or about October 1, 2024, ATL unlawfully towed a 2024 BMW 228xi owned by Sixt and bearing VIN WBA73AK09R7R49282. ATL immediately demanded $24,300 in towing fees in exchange for the vehicle.

43. On or about October 2, 2024, ATL unlawfully towed a 2024 Jeep Compass owned by Sixt and bearing VIN 3C4NJDDN2RT137442. ATL immediately demanded $24,000 for the tow (and possession of the vehicle).

44. On or about that same day, ATL unlawfully took a 2023 Nissan Versa owned by Sixt and bearing VIN 3N1CN8EV4PL863336. Again, ATL immediately demanded $24,000 for the tow (and possession of the vehicle).

45. ATL never provided Sixt with any notice prior to towing these vehicles.

46. Sixt was forced to pay these illegal fees in order to recover these vehicles, which are part of Sixt's fleet and essential to its business operations.

C.  *Illegal Tows and the Unlawfully Detained Vehicles*

47. ATL's wrongful pursuit and takings of Sixt's vehicles have continued over the last four weeks. ATL continues to wrongfully detain the vehicles described below (collectively referred to as the "Detained Vehicles") subject to illegal/fraudulent tow charges.

48. On or about October 2, 2024, ATL unlawfully towed a Hyundai Tucson owned by Sixt and bearing VIN KM8JBCDE1RU302923. ATL immediately demanded $24,000 for the tow (and possession of the vehicle). A true and correct copy of Sixt's Title to this vehicle is included within Composite Exhibit A hereto.

49. On or about October 3, 2024, ATL unlawfully towed a Nissan Sentra owned by Sixt and bearing VIN 3N1AB8CV8PY234717. ATL immediately

12

demanded $24,000 for the tow (and possession of the vehicle). A true and correct copy of Sixt's Title to this vehicle is included within Composite Exhibit A hereto.

50. On or about October 6, 2024, ATL unlawfully towed a Volvo S60 owned by Sixt and bearing VIN 7JRL12FK2RG325379. ATL immediately demanded $24,000 for the tow (and possession of the vehicle). A true and correct copy of Sixt's Title to this vehicle is included within Composite Exhibit A hereto.

51. On or about October 8, 2024, ATL unlawfully towed a Toyota Corolla owned by Sixt and bearing VIN 5YFB4MDE6RP116557. ATL immediately demanded $24,000 for the tow (and possession of the vehicle). A true and correct copy of Sixt's Title to this vehicle is included within Composite Exhibit A hereto

52. On or about October 16, 2024, ATL unlawfully towed a Nissan Altima owned by Sixt and bearing VIN 1N4BL4DW5RN393912. ATL immediately demanded $24,000 for the tow (and possession of the vehicle). A true and correct copy of Sixt's Title to this vehicle is included within Composite Exhibit A hereto.

53. On or about October 16, 2024, ATL unlawfully towed a GMC Terrain owned by Sixt and bearing VIN 3GKALTEG2RL344128. ATL immediately demanded $24,000 for the tow (and possession of the vehicle). A true and correct copy of Sixt's Title to this vehicle is included within Composite Exhibit A hereto.

54. On or about October 20, 2024, ATL unlawfully towed a Hyundai Tucson owned by Sixt and bearing VIN 5NMJBCDE8RH390316. ATL immediately

demanded $24,000 for the tow (and possession of the vehicle). A true and correct copy of Sixt's Title to this vehicle is included within Composite Exhibit A hereto.

55. On or about October 21, 2024, ATL unlawfully towed a BMW X5 owned by Sixt and bearing VIN 5UX23EU00R9S14789. ATL immediately demanded $18,760.00 for the tow (and possession of the vehicle). A true and correct copy of Sixt's Title to this vehicle is included within Composite Exhibit A hereto.

56. On or about October 24, 2024, ATL unlawfully towed a Chrysler Pacifica owned by Sixt and bearing VIN 2C4RC1BG4RR144474. ATL immediately demanded $24,000 for the tow (and possession of the vehicle). A true and correct copy of Sixt's Title to this vehicle is included within Composite Exhibit A hereto.

57. ATL never provided Sixt with any notice prior to towing these vehicles.

D. *RJ Participates in ATL's Ongoing Scam*

58. Illinois public records indicate that RJ is owned by Jeremiah Rush.

59. A review of the social media accounts of ATL and its agents shows that Jeremiah Rush works alongside ATL and its crew.

60. Social media posts by ATL and its principals and agents also show Jeremiah Rush alongside at least one of the renters of the vehicles (Jeep Compass) unlawfully taken by ATL and referenced above.

61. On September 11, 2024, RJ unlawfully towed a Hyundai Tucson owned by Sixt and bearing VIN KM8JBCDEXRU308199. RJ immediately demanded

14

$9,000 for the tow (and possession of the vehicle). RJ continues to wrongfully and illegally detain Sixt's vehicle. A copy of Sixt's title to the vehicle is included in Composite Exhibit B hereto.

62. On October 10, 2024, RJ unlawfully towed a Mazda CX-50 owned by Sixt and bearing VIN 7MMVABBM8SN307033. RJ immediately demanded $9,000 for the tow (and possession of the vehicle). RJ continues to wrongfully and illegally detain Sixt's vehicle. A copy of Sixt's title to the vehicle is included in Composite Exhibit B hereto. This Mazda CX-50 and the Hyundai Tucson referenced in paragraph 61 are collectively referred to as the "RJ Vehicles."

63. RJ never provided Sixt with any notice prior to the towing of these vehicles.

## COUNT I
## REPLEVIN
(*Against ATL Towing & ADT Towing*)

64. Sixt hereby incorporates and realleges the allegations of paragraphs 1-63 as though fully set forth herein.

65. This is an action for replevin of the Detained Vehicles.

66. Sixt is the record owner of the Detained Vehicles, as evidenced by the titles attached hereto as Composite Exhibit C.

67. The Detained Vehicles have been illegally towed and unlawfully detained by ATL, who towed the Detained Vehicles without a license and has

15

asserted control over the Detained Vehicles subject to illegal and fraudulent fees and charges.

68. ATL is in unlawful possession of the Detained Vehicles.

69. The Detained Vehicles have not been taken for a tax, assessment, or fine pursuant to law.

70. Further, the Detained Vehicles have not been taken under an execution or attachment against the property of Sixt.

71. Sixt retained the undersigned counsel to take legal action to recover the Detained Vehicles from ATL and is entitled to recover its costs and reasonable attorney's fees.

WHEREFORE Plaintiff Sixt demands judgment against Defendant ATL granting replevin of the Detained Vehicles, ordering the immediate return of the Detained Vehicles to Sixt, and granting such other and further legal and equitable relief as the Court deems appropriate under the circumstances.

## COUNT II
## REPLEVIN
### (*Against RJ*)

72. Sixt hereby incorporates and realleges the allegations of paragraphs 1-63 as though fully set forth herein.

73. This is an action for replevin of the RJ Vehicles.

74. Sixt is the record owner of the RJ Vehicles, as evidenced by the titles attached hereto as Composite Exhibit D.

75. The RJ Vehicles have been illegally towed and unlawfully detained by RJ, who towed the RJ Vehicles and has asserted control over the RJ Vehicles subject to illegal and fraudulent fees and charges.

76. RJ is in unlawful possession of the RJ Vehicles.

77. The RJ Vehicles have not been taken for a tax, assessment, or fine pursuant to law.

78. Further, the RJ Vehicles have not been taken under an execution or attachment against the property of Sixt.

79. Sixt retained the undersigned counsel to take legal action to recover the RJ Vehicles from RJ and is entitled to recover its costs and reasonable attorney's fees.

WHEREFORE Plaintiff Sixt demands judgment against Defendant RJ granting replevin of the RJ Vehicles, ordering the immediate return of the RJ Vehicles to Sixt, and granting such other and further legal and equitable relief as the Court deems appropriate under the circumstances.

## COUNT III
## <u>INJUNCTION</u>

80. Sixt hereby incorporates and realleges the allegations of paragraphs 1-63 as though fully set forth herein.

81. ATL, RJ, their operators, and, upon information and belief, third-parties have conspired to unlawfully take Sixt's vehicles and subject Sixt to illegal/fraudulent tow charges and the deprivation of vehicles essential to its daily business operations.

82. Pursuant to Rule 65, Fed. R. Civ. P., every injunction is binding on the parties to the action, their officers, agents, employees and attorneys; and those in active concert or participation with them.

83. Sixt is suffering irreparable harm as a result of ATL and RJ's purposeful targeting of Sixt's rental car fleet and property.

84. Sixt's remedy at law is insufficient, inadequate and/or incomplete.

WHEREFORE Sixt respectfully requests this Court enter a temporary and permanent injunction against the Defendants (and anyone acting in concert with them) enjoining Defendants from towing any vehicle owned by Sixt, awarding Sixt legal fees and costs incurred in bringing this action, and granting such further relief in favor of Sixt as this Court deems just and proper under the circumstances.

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the facts stated in paragraphs 10-13, 15-63, 65-71, and 73-79 of this Complaint are true and correct.

*Jonathan Rios*
Jonathan Rios (Nov 11, 2024 06:25 EST)
_____
Jonathan Rios, Corporate Investigations Manager
Sixt Rent a Car, LLC

Dated: November 11, 2024

ARMAS BERTRAN ZINCONE
4960 SW 72nd Avenue
Suite 206
Miami, Florida 33155
Telephone: (305) 661-2021

/s/ *Francesco A. Zincone*
FBN 100096
fzincone@armaslaw.com

19